## Winnefred McGreevy, Defendant in Error, v. National Union, Plaintiff in Error.

### Gen. No. 14,594.

1. INSURANCE—*when making of material false statement in application will defeat recovery.* If the application, the statements of which are expressly warranted to be true, contain a false statement as to a material fact, a recovery will not be sustained.

2. INSURANCE—*effect of receiving policy with copy of application containing false statement attached.* If an examining physician has filled in the blanks in the application and such application contains false statements as to material facts, the receiving and retention by the insured of the policy or certificate with a copy of such application attached as a part thereof, is a ratification by the insured of the insertion by the physician of those answers which were in fact given.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of facts. Opinion filed December 7, 1909.

CHARLES J. KAVANAGH, for plaintiff in error.

JOHN A. BLOOMINGSTON, for defendant in error.

MR. JUSTICE MACK delivered the opinion of the court.

This action is on a benefit certificate issued by defendant to plaintiff's husband and payable to plaintiff. The application and medical examination are expressly made a part of the certificate and a copy is attached thereto. The certificate provides as follows:

"This certificate is granted upon the express condition that all statements and representations made by said member in his application for membership in said council and all statements made the Medical Examiner by him are true, and upon further condition that this friend complies with the Laws of the Order now in force or which shall hereafter be enacted."

The application signed by deceased contained the following:

"I do hereby consent and agree that any untrue statements made above, or to the Medical Examiner, or any concealment of facts by me in this application, in regard to my health, habits, or circumstances, personal or family history, or my suspension or expulsion from, or voluntary severing of my connection with the Order, shall forfeit the rights of myself and my family or beneficiary to all benefits and privileges therein."

The medical examination contains the following questions and answers: "13A. When and for what did you last seek medical advice? A. Nothing. 14A. For what have you had medical advice during the last five years? A. Nothing. 16. Have you ever had any of the following disorders or diseases? (Answer 'yes' or 'no' to each.) Pneumonia or inflammation of the lungs? A. No." At the end of the medical examination is the following: "I hereby warrant that the answers to the above questions are true and I agree that any impairment of my present physical condition before the completion of my membership shall invalidate any benefit certificate issued thereon," which was also signed by said McGreevy.

The evidence shows that the deceased was attended by his physician for pneumonia in October, 1905; the medical examination for the insurance was in February, 1906, and the death from tuberculosis in August, 1907.

The examining physician called in rebuttal by plaintiff testified that he did not remember whether he asked McGreevy if he had had pneumonia; that McGreevy did not have certain data as to his family history and was to send it to be filled in; that he thought it was mailed to him and that his wife had copied it off. He further stated that every answer which appeared in his heavy writing was obtained from McGreevy personally after putting the question; that part of those answers were written in before and part after McGreevy had signed the document. The answer "Nothing" to the question 13A appears in heavy writing, while the same word in answer to the question 14A, as well as the answer "No" to question 16, is in the light handwriting of the doctor's wife.

On direct examination the physician was asked, "State whether or not he said he had not had medical advice for any disease," to which he answered, "He did not." The cross-examination was in part as follows:

"Q. Take for instance answer to question 13A and let me read that. 'When and for what did you last seek medical advice?'

A. 'Nothing.'

Q. That answer is in your handwriting?

A. I believe that is in my handwriting.

Q. That is true, that is what he told you, is it not?

A. That is what I presume.

Q. You would not have written it down if it had not been answered?

A. I do not think I would."

This physician was plaintiff's witness. His testimony is contradictory in part and unreliable. Without it, however, plaintiff could not succeed, as on the

face of the papers the deceased had made a materially false representation and warranty.

It is urged, however, that this evidence shows, or at least that the jury was justified in believing therefrom, that none of these material questions had been asked the deceased, and that, therefore, the warranty did not extend to them.

It seems to us, however, clear that the apparent contradiction between the direct and cross-examination can be avoided by a closer examination of the question put to the witness on the direct examination. Counsel carefully avoided asking whether or not question 13A had been asked and answered. The question put, "State whether or not he said he had not had medical advice for any disease?" is more applicable to 14A than to 13A. The question as put presupposes that the blank form contains the question, "Have you had medical advice for any diseases?" But there is no such question in the blank. 13A is, "When and for what did you *last* seek medical advice?" 14A is, "For what have you had medical advice during the last five years?" The answer "Nothing" to 13A is in the doctor's handwriting; that to 14A is in the handwriting of the doctor's wife. Under his testimony, the only conclusion that in our judgment can reasonably be drawn is that he did ask him question 13A and received the answer; but that he did not ask him 14A.

Whether the answer to 13A was inserted before or after signature is immaterial. It is clear that the physician, though acting for the company, was authorized by the deceased to fill up the blanks in accordance with the statements made and those regarding family history to be furnished. Moreover, when the certificate was issued, a copy of the examination, containing these answers over the signature of the deceased, was attached to it as part of it. Whatever the effect of receiving and retaining the certificate in that form may be, as to those questions and answers which were

never put or answered, it seems to us clear that it is a ratification, if ratification be needed, of the insertion by the doctor of those answers which were in fact given. Nat'l Union v. Arnhorst, 74 Ill. App. 482; Spence v. Central Acc. Ins. Co., 236 Ill. 444. We are entirely satisfied on this record that a materially false statement was knowingly made by the deceased for the purpose of securing this insurance. Under these circumstances, his beneficiary can obtain no rights against the company.

The judgment will be reversed with a finding of facts.

*Reversed with a finding of facts.*